# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**SYEDA EHAN & MAA CORPORATION, INC.** )
a Florida Corporation, D/B/A **VALUE MARKET** )
and **SYEDA GULZAR JAHAN**, an Individual, ) CASE NO.
)
Plaintiffs, )
**v.** )
)
**UNITED STATES OF AMERICA,** )
)
Defendant. )

## COMPLAINT

The Plaintiffs, SYEDA EHAN & MAA CORPORATION, INC., a Florida Corporation d/b/a VALUE MARKET, and SYEDA GULZAR JAHAN, an Individual, by and through their undersigned counsel and hereby file this Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

### FACTUAL BACKGROUND

1. The Plaintiff owns and operates a retail store in Tampa, Florida, named SYEDA EHAN & MAA CORPORATION, INC., a Florida Corporation d/b/a VALUE MARKET (hereinafter referred to as "VALUE MARKET"). The store is comprised of a commercial storefront dedicated to retail sales of retail food market, focusing mostly on groceries to the Plaintiffs' customers.

2. Located in Florida's 14th Congressional District, VALUE MARKET serves a community where approximately 53,791 of the local residents receive Supplemental Nutrition Assistance Program benefits[1] ("SNAP"), formerly known as Food Stamps,

---

[1] See USDA Publication of January 2018, Profile of SNAP Households: Florida Congressional District 14.

which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). Of said local residents, approximately 44.3% are below the poverty level, 33.8% of said households are with one or more people 60 years of age and over, 43.4% of said households are with child(ren) under the age of 18 years, and 40.7% of said households are with disabled individual(s).

3. Accordingly, VALUE MARKET began accepting Electronic Benefit Transfers (or "EBT") to better serve the local community. As a result, VALUE MARKET grew its SNAP participant customer base to a substantial share of the store's total clientele. EBT transactions at VALUE MARKET account for a substantial portion of the store's gross revenue, though the SNAP clientele account for an even larger portion of the gross revenue (the difference being found in non-SNAP related purchases).

4. On March 14, 2019, the USDA, through the FNS, issued a Charging Letter to the Plaintiffs, wherein the Plaintiffs were charged by the Defendant with selling minor ineligible items at the store which resulted in a six (6) month suspension of their SNAP license.

5. The Plaintiffs denied and defended against the Charging Letter, but on May 20, 2019 they were disqualified for a period of six (6) months from SNAP.

6. Accordingly, on May 28, 2019, the Plaintiffs filed for an Administrative Review of the Department's decision to disqualify them, as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position. The Plaintiffs took issue not only with the evidence that any violations of SNAP retailer policies had occurred, but also with whether or not they were neglectful or careless in their operation of the store and oversight of the employees.

7. The Administrative Review Division of the USDA responded to the Plaintiffs' appeal in a letter and opinion dated August 29, 2019, which was received September 4, 2019. The Plaintiffs' appeal was denied. A copy of the letter and opinion dated August 29, 2019 are attached hereto as **Exhibit "A"**.

8. This Judicial Appeal has been filed timely and seeks the reversal of the USDA's current decision to disqualify the Plaintiffs for six (6) months from participating as a SNAP retailer.

## JURISDICTION AND VENUE

9. The Plaintiffs bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

10. This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023, and 7 C.F.R. §279.7. Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

11. Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as this Plaintiffs' business was owned and operated in Tampa, Hillsborough County, Florida, and because the facts giving rise to the circumstances herein occurred in the Middle District of Florida.

## PARTIES

12. The Plaintiff, SYEDA EHAN & MAA CORPORATION, INC., a Florida Corporation d/b/a VALUE MARKET, operates at 12201 N. Florida Ave., Tampa, Florida 33612. VALUE MARKET is referred to herein as "VALUE MARKET" and referred to herein collectively with the other Plaintiffs as "Plaintiffs".

13. SYEDA GULZAR JAHAN, an Individual, is a natural person and resident of Florida and is a registered owner of SYEDA EHAN & MAA CORPORATION, INC., a Florida Corporation d/b/a VALUE MARKET.  SYEDA GULZAR JAHAN is referred to herein collectively with the other Plaintiffs as "Plaintiffs".

14. The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service (hereinafter referred to as "FNS").

## GENERAL ALLEGATIONS

15. The Supplemental Nutrition Assistance Program (SNAP) is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

16. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements.  SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household.  These benefits are transmitted to, and utilized by, the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

17. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailers, such as VALUE MARKET.

### SNAP VIOLATION REGULATIONS AND POLICIES

18. In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6 which in pertinent part permits the disqualification or suspension of retailers who violate SNAP regulations and defines what those violations are. In pertinent part, and relied upon by the Defendant in issuing the suspension in this case, is §278.6(5) and (6):

    a. "Disqualify the firm for 6 months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items *due to carelessness or poor supervision by the firm's ownership or management.*" 7 U.S.C. §278.6(5) (2009) (emphasis added).

19. The regulation clearly draws a line between violations that are a result of an employee's malicious or incidental mistakes that occur despite reasonable efforts and oversight from ownership/management, and those which occur as the result of the poor handling of the company and its employees by the management. Effectively, the regulation seeks only to sanction those stores where the ownership/management has created an environment to permit violations to fester or occur uninhibited.

20. In this instant action, the Defendant has alleged that the Plaintiffs committed transactions which amount to the selling of ineligible common non-food items (also referred to as "minor ineligible items") in EBT transactions. Such allegations were based upon unsworn statements of unidentified investigators.

21. In all, the Charging Letter claims that the Plaintiff allegedly sold[2] different ineligible items to the Investigator: (1) bar of zest soap; (2) package of quality collection plastic cups (16 oz.-15 count); (3) Container of Lucky Super soft Wet Wipes (42 Wet Wipes); and (4) Dr. Fresh Travel Kit (which contained toothpaste and a toothbrush).

22. Notably, neither the Charge Letter (which instituted the action) nor the proceedings before the Administrative Review Office, offered any evidence or allegation that the store's ownership was careless or neglectful in their operation of the store or oversight of the employees.

23. The store, in fact, did oversee its employees and provide SNAP training. At no time was the store owner or manager neglectful or careless in the operation of the store.

24. As such, the determination that neglect or carelessness on the part of the management/ownership existed was without evidence of support, and ultimately based on either insufficient information or arbitrary standards.

### ISSUANCE OF HARDSHIP CIVIL MONEY PENALTIES

25. With respect to the issuance of Civil Money Penalties in lieu of suspensions, 7 U.S.C. §278.6 permits the Department to issue a civil money penalty. As noted by the District of Oregon in the case *Plaid Pantry Stores, Inc. vs. U.S.*, 612 F.Supp. 680, 684 (D. Oregon 1985) in drafting the Food Stamp Act and the statutes upon which the Defendant now operates and under which this case arises, "Congress believed that civil money penalties should be the normal penalty instead of disqualification."

---

[2] Albeit on different occasions.

**COUNT I: REQUEST FOR JUDICIAL REVIEW**

26. The Plaintiffs incorporate and restate each and every paragraph set forth above as though more fully set forth herein.

27. The Plaintiffs, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7 have the right to, and hereby do, request a *de novo* judicial review of the six (6) month suspension issued by the Defendant against the Plaintiffs.

28. The initial administrative decision, in addition to the Final Agency Decision rendered upon the Administrative Appeal, errantly found that the Plaintiffs had committed SNAP regulation violations as a result of accepting SNAP benefits in exchange for "common ineligible non-food items."

29. The store denies that the transactions occurred as described, or were in any way violative.

30. Furthermore, the Final Agency Decision wrongly determined that the store's ownership and/or management was careless or neglectful in its operation of the firm and oversight of the clerks.

31. Furthermore, even if the transactions had occurred as described by the Defendant, they were in no way the result of ownership of managerial carelessness or neglect.  The store is thorough and careful in its training, though not omniscient or omnipresent for every transaction.

32. Both the finding of a sale of ineligible items, and that such sale was the result of managerial or ownership neglect or carelessness.

33. The Plaintiffs have never been afforded an opportunity to cross examine the two investigators, nor have they been permitted the opportunity to review the Administrative Record and respond to the allegations and evidence set forth therein.

34. As such, the Defendant, acting through its department and sub-departments in the USDA, improperly and impermissibly suspended the Plaintiff from participation in SNAP for six (6) months.

35. Therefore, the six (6) month disqualification against the Plaintiffs should be set aside by this Court in favor of the issuance of a warning letter, and the Plaintiffs' status as an approved SNAP retailer should be reinstated.

**WHEREFORE**, the Plaintiffs, DAYTONA FRIENDS IMAGE, LLC, a Florida Limited Liability Co. d/b/a VALUE MARKET, LOVELY GEORGE DAS, an Individual, and SAJITHA G. NAIR, an Individual, respectfully request this Honorable Court conduct a Judicial Review of the Defendant's six (6) month disqualification of the Plaintiffs, and subsequently enter Judgment against the Defendant for improperly disqualifying the Plaintiffs for six (6) months, as well as awarding the Plaintiffs the attorney's fees and costs incurred in this action.

<u>COUNT II: ARBITRARY AND CAPRICIOUS SANCTION</u>

36. The Plaintiffs hereby incorporate and restate paragraphs 1 through 25 above as though more fully set forth herein.

37. The Defendant has issued a series of internal policies which in pertinent part are designed to outline the system of punishments and sanctions for violations of the SNAP program by authorized retailers.

38. The policies themselves draw arbitrary lines between numbers of ineligible items and transactions which fail to take into consideration the volume of visits done by an investigator or a confidential informant.

39. In any case, the Defendant lacked substantial evidence to indicate that the alleged violations arose to the level of carelessness and/or poor supervision on the part of the Plaintiffs which would indicate a failure at the managerial level to supervise employees as required under the applicable regulations to support a six (6) month disqualification.

40. As such, the transactions qualify as inadvertent in nature, and given the other evidence in the administrative record indicating a staunch refusal to sell ineligible items and refusals to traffick in SNAP benefits, the Defendant's internal policies required a letter to be issued rather than a suspension.

**WHEREFORE**, the Plaintiffs, DAYTONA FRIENDS IMAGE, LLC, a Florida Limited Liability Co. d/b/a VALUE MARKET, LOVELY GEORGE DAS, an Individual, and SAJITHA G. NAIR, an Individual, respectfully request this Court set aside the Defendant's suspension of the Plaintiffs from participating in the SNAP program, as well as awarding the Plaintiffs attorney's fees and costs incurred in this action.

**COUNT III: JUDICIAL REVIEW OF DENIAL OF CIVIL MONEY PENALTY**

41. The Plaintiffs hereby incorporate and restate paragraphs 1 through 25 above as if more fully set forth herein.

42. The Plaintiffs timely requested the Department to issue a Hardship Civil Money Penalty in lieu of a six (6) month disqualification as the impact on the local community would be significant in the absence of VALUE MARKET ability to accept EBT.

43. The Defendant subsequently denied the request, leaving the matter for Judicial Review pursuant to 7 U.S.C. §2023.

44. Review of the Defendant's decision to issue (or decline) a civil money penalty is subject to *de novo* judicial review so that the Court has the opportunity to independently evaluate the evidence.  See *Affum v. U.S.,* 566 F.3d 1150, 1160 (D.C. Cir. 2009).

45. As such, the Plaintiffs request this Court review the Plaintiffs' request for the issuance of a hardship civil money penalty as permitted by law, and to issue said penalty if it is found to be appropriate in lieu of any sanction resulting from the Court's decision in Count I of this Complaint.

**WHEREFORE**, the Plaintiffs, SYEDA EHAN & MAA CORPORATION, INC., a Florida Corporation d/b/a VALUE MARKET, and SYEDA GULZAR JAHAN, an Individual**,** respectfully request this Honorable Court enter Judgment reversing the Defendant's decision not to issue a hardship civil money penalty, and instead instruct Defendant to issue such penalty in the event a suspension is upheld under Count I, as well as awarding the Plaintiffs attorney's fees and costs incurred in this action.

This matter has been respectfully submitted to the Court by the undersigned attorney, and shall be served upon the Defendant in the manner prescribed by the Federal Rules of Civil Procedure, 7 C.F.R. §279 and 7 U.S.C. §2023, as will be evidenced by the proof of service filed with the Court hereafter.

Dated: September 26, 2019                                  Respectfully submitted,

METROPOLITAN LAW GROUP, PLLC

*Andrew Z. Tapp*
ANDREW Z. TAPP, ESQ.
Florida Bar No.: 68002

1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
(813) 228-0658
Andrew@Metropolitan.Legal
LaJeana@Metropolitan.Legal

**COUNSEL FOR PLAINTIFFS**